IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | | |
|---|---|---|
| AMERICAN FEDERATION OF STATE, | ) | |
| COUNTY, MUNICIPAL EMPLOYEES | ) | |
| LOCAL 1733, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 11-2577 |
| | ) | |
| CITY OF MEMPHIS, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER DENYING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

This action is brought against the City of Memphis (the "City") by Plaintiffs American Federation of State, County, Municipal Employees Local 1733; Communication Workers of America Local 3806; International Association of Fire Fighters Local 1784; International Association of Machinists and Aerospace Workers Lodge 3; International Brotherhood of Electrical Workers Local 474; International Union of Bricklayers and Allied Craftworkers Local 5; International Union of Operating Engineers Local 369; Memphis Police Association; Operative Plasterers and Cement Masons International Association Local 908; Painters and Allied Trades Local 49; United Association of Plumbers, Pipefitters and Sprinkler Fitters Local Union No. 17; United

1

Brotherhood of Carpenters Local 345; United Union of Roofers, Waterproofers and Allied Workers Local 115 (collectively, the "Unions"); and Essica Littlejohn, in her individual capacity and as representative for all others similarly situated (together with the Unions, "Plaintiffs"). (<u>See</u> ECF 18-1.) Plaintiffs bring suit under 42 U.S.C. § 1983, alleging that the City's unilateral implementation of a wage reduction violated its employees' rights under the First and Fourteenth Amendments to the United States Constitution and § 5-4-13 of the City of Memphis Code of Ordinances (the "Impasse Ordinance"). On August 5, 2011, Plaintiffs moved for a preliminary injunction. (Motion, ECF No. 18.) The City responded in opposition on August 19, 2011. (ECF No. 23.) Plaintiffs replied on September 16, 2011. (ECF No. 32.)

On November 9, 2011, the Court held an injunction hearing and ordered the parties to file supplemental authority and affidavits. (ECF No. 36.) On May 18, 2012, Plaintiffs filed a supplemental memorandum that incorporated arguments and documentary evidence addressing the City's position. (ECF No. 73.) On June 15, 2012, the City responded to Plaintiffs' supplemental memorandum and incorporated arguments and evidence in its briefs on other motions before the Court. (ECF No. 77.) After considering the arguments of the parties and the facts adduced, Plaintiffs' Motion is DENIED.

## I.    Background

The Unions represent more than 5,000 City employees in collective bargaining negotiations with the City.  The Unions and the City negotiated under the Impasse Ordinance, which provides procedures for the resolution of municipal labor disputes.  In March 2011, after a month of negotiating, the Unions and the City agreed to the terms of a Memorandum of Understanding ("MOU") to be effective from July 1, 2011, through June 30, 2013.  The MOU provided for benefits, salaries, wages, and other forms of compensation.  The Unions and the City agreed that the terms of the MOU would remain unchanged until June 30, 2013, but that either party could reopen negotiations after one year to renegotiate wages.

On June 24, 2011, the City informed its employees that it was implementing a 4.6% salary reduction, eliminating some benefits, and offering "buy out" packages for qualifying employees.  Plaintiffs seek a preliminary injunction reversing the 4.6% pay reduction that took effect in July 2011 and ordering repayment of the 4.6% salary reduction to employees who received paychecks based on the reduced wages.  Alternatively, Plaintiffs seek an order that the City pay an amount equal to 4.6% of all affected employees' salaries into an escrow account until the case is resolved.  They ask the Court to order the City to comply with the MOU adopted under the Impasse Ordinance.

## II.  Jurisdiction

The Court has subject matter jurisdiction under 28 U.S.C. § 1331 because Plaintiffs' suit under 42 U.S.C. § 1983 raises a federal question.  The Court has supplemental jurisdiction over Plaintiffs' state law claim because it derives from a "common nucleus of operative fact."  See 28 U.S.C. § 1367(c); United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 725 (1966).

## III. Standard of Review

A preliminary injunction is an "extraordinary measure" that is "one of the most drastic tools in the arsenal of judicial remedies." ACLU v. McCreary Cnty., 354 F.3d 438, 444 (6th Cir. 2003) (citing Detroit Newspaper Publishers Ass'n v. Detroit Typographical Union No. 18, 471 F.2d 872, 876 (6th Cir. 1972)). Preliminary injunctions should not be granted when the outcome in a case is doubtful or does not fall within well-established principles of law.  Id. (characterizing Detroit Newspaper Publishers Ass'n, 471 F.2d at 876). District courts have discretion to grant preliminary injunctions, and a court's "determination will be disturbed only if [it] relied upon clearly erroneous findings of fact, improperly applied the governing law, or used an erroneous legal standard." Connection Distrib. Co. v. Reno, 154 F.3d 281, 288 (6th Cir. 1998) (citing Blue Cross & Blue Shield Mut. of Ohio v. Blue Cross & Blue Shield Ass'n, 110 F.3d 318, 322 (6th Cir. 1997)); see also

*Moltan Co. v. Eagle-Picher Indus., Inc.*, 55 F.3d 1171, 1175 (6th Cir. 1995) (the Sixth Circuit "will reverse a district court's weighing and balancing of the equities only in the rarest of circumstances").

Courts balance four factors when determining whether to grant a preliminary injunction: (1) the plaintiff's likelihood of success on the merits; (2) whether the plaintiff would suffer irreparable harm without the injunction; (3) whether granting the injunction would cause substantial harm to others; and (4) the impact of the injunction on the public interest. *ACLU*, 354 F.3d at 445 (citing *Rock & Roll Hall of Fame & Museum, Inc. v. Gentile Prods.*, 134 F.3d 749, 753 (6th Cir. 1998)); *see also Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 542 (6th Cir. 2007). Federal Rule of Civil Procedure 52(c) "requires a district court to make specific findings concerning each of these four factors, unless fewer are dispositive of the issue." *ACLU*, 354 F.3d at 445 (citing *In re DeLorean Co.*, 755 F.2d 1223, 1228 (6th Cir. 1985)). "The four considerations applicable to preliminary injunction decisions are factors to be balanced, not prerequisites that must be met." *Jones v. City of Monroe*, 341 F.3d 474, 476 (6th Cir. 2003).

For preliminary injunctions based on "the potential violation of the First Amendment, the likelihood of success on

the merits often will be the determinative factor" because the "loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." Connection Distrib. Co., 154 F.3d 281 at 288. "When reviewing a motion for a preliminary injunction, if it is found that a constitutional right is being threatened or impaired, a finding of irreparable injury is mandated." ACLU, 354 F.3d at 445 (citing Elrod v. Burns, 427 U.S. 347 (1976)). The determination of "where the public interest lies also is dependent on a determination of the likelihood of success on the merits of the First Amendment challenge because 'it is always in the public interest to prevent the violation of a party's constitutional rights.'" Connection Distrib. Co., 154 F.3d 281 at 288 (quoting G & V Lounge, Inc. v. Michigan Liquor Control Comm'n, 23 F.3d 1071, 1079 (6th Cir. 1994)). The questions of harm to the parties and the public interest "cannot be addressed properly . . . without first determining if there is a constitutional violation." Id.

## IV. Analysis

### A. Likelihood of Success on the Merits

#### 1. First Amendment

Plaintiffs argue that the City violated its employees' First Amendment right to petition the government for the redress of grievances by circumventing the Impasse Ordinance.

Plaintiffs argue that, by reducing wages after labor negotiations had ended, the City prevented the Unions from declaring a "total impasse". Under Plaintiffs' theory, being precluded from declaring a "total impasse" impaired their ability to petition the Memphis City Council.

To demonstrate a likelihood of success on the merits, a party is not required to prove its case, but "a plaintiff must show more than a mere possibility of success." Tenke Corp., 511 F.3d at 543 (citations omitted). "[I]t is ordinarily sufficient if the plaintiff has raised questions going to the merits so serious, substantial, difficult, and doubtful as to make them a fair ground for litigation and thus for more deliberate investigation." Id. (citing In re Delorean Motor Co., 755 F.2d at 1229). "[W]hen a party seeks a preliminary injunction on the basis of a potential violation of the First Amendment, the likelihood of success on the merits often will be the determinative factor." Bonnell v. Lorenzo, 241 F.3d 800, 809 (6th Cir. 2001).

"Congress shall make no law respecting . . . the right of the people . . . to petition the Government for a redress of grievances." U.S. Const. amend. I. During the Congressional debates on the First Amendment, James Madison explained that the Petition Clause was drafted so "people '[could] communicate their will' through direct petitions to the legislature and

government officials." McDonald v. Smith, 472 U.S. 479, 482 (1985) (citing 1 Annals of Cong. 738 (1789)). Implicit in "the very idea of [republican] government," protected petitions are "assurance[s] of a particular freedom of expression" whose roots "antedate the Constitution." Id. (quoting United States v. Cruikshank, 92 U.S. 542, 552 (1876)).

Petition Clause challenges are analyzed under the same framework as claims under the First Amendment's Speech Clause. See Campbell v. PMI Food Equip. Group, Inc., 509 F.3d 776, 789 (6th Cir. 2007). The threshold inquiry is "'whether the plaintiffs' conduct deserves constitutional protection.'" Holzemer v. City of Memphis, 621 F.3d 512, 521 (6th Cir. 2010) (quoting Reichert v. Draud, 701 F.2d 1168, 1170 (6th Cir. 1983)). "The plain language of the First Amendment makes clear that a 'petition' triggers the amendment's protections." Id. (citing Thaddeus-X v. Blatter, 175 F.3d 378, 387 (6th Cir. 1999)). "[W]hen one files a 'petition' one is addressing government and asking government to fix what, allegedly, government has broken or has failed in its duty to repair." Id. (quoting Foraker v. Chaffinch, 501 F.3d 231 (3d Cir. 2007)), overruled on other grounds by Borough of Duryea v. Guarnieri, 131 S. Ct. 2488, 2491 (2011). Petitions to "all departments of the Government" are protected. Id. Formal petitions are

defined by their invocation of an official mechanism of redress. See id.

Upon "total impasse," the Memphis City Council accepts or rejects proposals made by the City and labor organizations.[1] See Impasse Ordinance § 5-4-13(B)(6)-(7). If the City Council accepts a proposal, it becomes "part of the new [MOU] between the city and the organization(s)." Id. at § 5-4-13(B)(6). The City Council's decision "shall become effective and the [City Council] shall take whatever action is appropriate to implement" its decision. The Impasse Ordinance provides that these procedures are appropriate only "[i]n the event a total impasse is reached and the impasse continues for seven consecutive days." Id. at § 5-4-13(B).

Mechanisms for redress under city ordinances are protected petitions. See Holzemer, 621 F.3d at 521 ("The Petition Clause protects petitioning of 'all departments of Government.'"). "Total impasse" triggers a "formal mechanism of redress." Id. at 521; see also Campbell, 509 F.3d at 769. It establishes regulations and procedures for the resolution of employment disputes. When the City and labor organizations are unable to agree, the Memphis City Council will review economic proposals

---

[1] The Impasse Ordinance defines "total impasse" as the point at which "each party declares its last position in economic matters to be final and each party declares such position to be unacceptable, or the parties do not reach agreement by midnight of the negotiations deadline." (See Impasse Ordinance, § 5-4-13(A).

from both parties. Its review is a "grievance process" protected by the First Amendment. See Holzemer, 621 F.3d at 521.

Although the First Amendment protects petitioning under the Impasse Ordinance, Plaintiffs have not shown that they were denied the right to petition. No party invoked "total impasse." Nothing in the Impasse Ordinance provides that its procedures must be followed in the absence of "total impasse." Because "total impasse" was never reached, its corresponding procedures were never triggered. The Petition Clause does not guarantee a "formal mechanism of redress" if the "total impasse" procedures are never triggered. See Smith v. Arkansas State Highway Employees, 441 U.S. 463, 464-466 (1979) (the Arkansas State Highway Commission's refusal to consider employee grievances when filed by the union rather than the employee did not violate the Petition Clause). Indeed, the First Amendment "does not guarantee the right to communicate one's views at all times and places or in any manner that may be desired." Heffron v. Int'l Soc'y for Krishna Consciousness, Inc., 452 U.S. 640, 647 (1981). Absent "total impasse," the Unions were left with the same recourse available to all organizations and individuals in the City: direct petition to the Memphis City Council.

At the November 9 hearing, Plaintiffs argued that their petition to the Memphis City Council was inadequate because they

were given only two minutes.  Adequacy is not the constitutional standard.  See Gillard v. Norris, 857 F.2d 1095, 1101 (6th Cir. 1988) (rejecting plaintiff's claim that procedures did not adequately protect his First Amendment rights).  The Petition Clause does not require that government "listen to [grievances] in a particular formal setting."  See Minnesota St. Bd. of Comm. Colleges v. Knight, 465 U.S. 271, 282 (1984).  "[T]he First Amendment does not impose any affirmative obligation on the government to listen, to respond or, in this context, to recognize the association and bargain with it."  Smith, 441 U.S. at 465.  Plaintiffs engaged in the legislative process by addressing the City Council and meeting with individual council members.  (See Shea Flinn Aff. 2-3, 41-2; Valerie Snipes Aff. 2, ECF No. 41-6.)  That the Unions were unable to avail themselves of the Impasse Ordinance's hour-long hearing before the City Council does not mean that they were denied their right to petition.  The First Amendment does not protect particular forms of petitioning because they are superior.  Because the City "has not affirmatively prevented [Plaintiffs] from petitioning, there is no violation of [their] First Amendment rights."  Norris, 857 F.2d at 1101.

Plaintiffs contend that the City negotiated in bad faith by entering into the MOU with knowledge that it intended to reduce salaries.  Plaintiffs argue that bad faith negotiating tactics

11

allowed the City to circumvent the Impasse Ordinance. Plaintiffs' supporting affidavits show, at most, that the Unions sought and received clarification during labor negotiations that wages would not be reduced. (See Michael Halley Aff. 2–3, ECF No. 18-3; Robert Santucci Aff. 2, ECF No. 18-5; see also Labor Negotiations Tr. 43-47, 61-64, ECF No. 44-1.) The City explicitly stated that it was not "trying to pull the wool" over Plaintiffs' eyes during negotiations. (See Labor Negotiations Tr. 61.) Probing the City's alleged bad faith draws attention from the relevant inquiry. Plaintiffs have not offered any authority, and the Court has found none, concluding that Plaintiffs have a right to particular or superior forms of redress under the First Amendment. The Unions represent more than 5,000 employees, none of whom, including the labor representatives themselves, was prevented from lobbying, speaking before, or otherwise attempting to influence the Memphis City Council. Plaintiffs are unlikely to succeed on their First Amendment claim.

### 2. Fourteenth Amendment

Plaintiffs argue that the City deprived its members of 4.6% of their salaries without due process. The Fourteenth Amendment provides that "no . . . State . . . shall deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, § 1. "Property interests are not created by

12

the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source[,] such as state law . . . rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." <u>Bd. Of Regents v. Roth</u>, 408 U.S. 564, 577 (1972); <u>accord</u> <u>Aldridge v. City of Memphis</u>, 404 F. App'x 29, 34-35 (6th Cir. 2010). Plaintiffs must identify a statute, policy, practice, regulation, or guideline that creates a property right. <u>Woolsey v. Hunt</u>, 932 F.2d 555, 564 (6th Cir. 1991). Rules and understandings "need not be a formal [] system or even an explicit contractual provision," but can be agreements implied from the defendants' words and conduct in light of the surrounding circumstances. <u>Id.</u>; <u>see also</u> <u>Aldridge</u>, 404 F. App'x at 34-35 ("Such independent sources include state statutes and regulations, explicit contractual guarantees, or even "agreements implied from 'the [defendants'] words and conduct in the light of the surrounding circumstances . . . .'") (quoting <u>Perry v. Sinderman</u>, 408 U.S. 593, 602 (1972)). If a plaintiff identifies an interest protected by state law, "the employee possesses a property interest of which the state employer cannot deprive the employee without providing due process." <u>Lisle v. Metro Gov't of Nashville</u>, 73 F. App'x 782, 785 (6th Cir. 2003).

Tennessee law specifically permits municipal collective bargaining only for transit workers. See Tenn. Code. Ann. § 7-56-101. Tennessee has no general statutory provision authorizing municipalities to engage in collective bargaining. See Kraemer v. Luttrell, 189 F. App'x 361, 365 (6th Cir. 2006); see also Fulenweider v. Firefighters Ass'n Local Union 1784, et al., 649 S.W.2d 268, 270 (Tenn. 1982). Since Weakley Cnty. Mun. Elec. Sys. v. Vick, 309 S.W.2d 792, 800-05 (Tenn. Ct. App. 1957), held that municipal collective bargaining agreements were generally unenforceable, Tennessee courts have concluded that those agreements are limited to carefully circumscribed situations. See Simerly v. City of Elizabethton, No. E2009-01694-COA-R3-CV, 2011 Tenn. App. LEXIS 1, *31-32 (Tenn. Ct. App., Jan. 5, 2011). "[A] municipality cannot enter into an enforceable collective bargaining agreement with its employees absent some express authority granted by a municipal charter or state statute." Id. (emphasis added).

Section 5-4-13(A)(4) of the Impasse Ordinance provides that "[i]tems, economic or noneconomic, mutually agreed to prior to the declaration of impasse . . . shall be made part of any future agreement or memorandum of understanding." Plaintiffs argue that City employees have a property interest in the wage terms negotiated under the Impasse Ordinance and that 4.6% represents the difference between the negotiated terms and their

reduced salaries.  Alternatively, Plaintiffs argue that reliance on promises by state actors creates a property interest protected by due process.

Plaintiffs' claim "hinges on whether anything in Tennessee statute, common law, or regulation creates [a property] interest[,]" or whether the surrounding circumstances highlight policies, practices, or understandings that create property rights.  See Aldridge, 404 F. App'x at 35 (quoting Lisle, 73 F. App'x at 785); see also Woolsey, 932 F.2d at 564.  Given the absence of any provision of Tennessee law creating the property interest for which Plaintiffs contend, they must identify some other source of authority.

There has been an uninterrupted development of authority prohibiting municipal collective bargaining in Tennessee.  See Kraemer, 189 F. App'x at 365; Aldridge, 404 F. App'x at 35; see, e.g., Local Union 760 v. City of Harriman, No. E2000-00367-COA-R3-CV, 2000 Tenn. App. LEXIS 792, at *9 (Tenn. Ct. App. Dec. 8, 2001) ("[W]e hold that the collective bargaining agreement between these parties is void and unenforceable.").  The facts in this case, however, appear to be unique.  The City, unlike the municipalities in earlier cases, expressly permits collective bargaining.  See Local 760, 2000 Tenn. App. LEXIS 792, at *9 ("We find that [the plaintiffs] were without express or implied authority, either by statute or under the Charter of

the City [], to engage in collective bargaining or to enter into a collective bargaining agreement with [the City].") That distinction does not make it more or less likely that Plaintiffs will prevail. Because no court has directly addressed a challenge to a collective bargaining agreement permitted under a municipal charter, the issue is unsettled.

Preliminary injunctions should "not be extended to cases which are doubtful or do not come within well-established principles of law." ACLU, 354 F.3d at 444. The only "well-established principle of law" here is that Tennessee courts find municipal collective bargaining agreements unenforceable. See, e.g., Kraemer, 189 F. App'x at 365 ("Given the latest pronouncements of the Tennessee Supreme Court and the Tennessee Court of Appeals, we must conclude that the Tennessee Supreme Court would continue to hold that contracts between municipalities and labor organizations are unenforceable under Tennessee law."). Plaintiffs are unlikely to establish the property interest proposed.

Even if Plaintiffs were likely to establish a property interest under the Impasse Ordinance, they would be unlikely to establish that City employees were denied due process. See Smith v. Jefferson Cnty. Bd. of Sch. Comm'rs., 641 F.3d 197, 216 (6th Cir. 2011) ("Analysis of [] procedural-due-process claim[s] involves two steps: establishing whether the [parties] have a

property interest in [their] positions, and determining what process (if any) is due."). The Sixth Circuit has concluded that political bodies "engaged in legislative activity" are not subject to the due process guarantees of the Fourteenth Amendment. See id. at 217. So long as legislative bodies institute and follow appropriate procedural safeguards, there is no due process violation. See Vitek v. Jones, 446 U.S. 480, 491 n.6 (1980).

The salaries of City employees were reduced by 4.6% after a budgetary hearing before the Memphis City Council. The Council's decision followed "integral steps in the legislative process" that assessed "the budgetary priorities of the city." Smith, 641 F.3d at 217. Plaintiffs were given an opportunity to be heard before the entire City Council and to persuade individual council members. The 4.6% reduction was part of the City's general budget. When the scope of legislation is general, its generality "provides a safeguard that is a substitute for procedural protections." Id. (quoting Ind. Land Co., LLC v. City of Greenwood, 378 F.3d 705, 710 (7th Cir. 2004)). "In such circumstances, 'the legislative process provides all the process that is constitutionally due.'" Id. at 217 (quoting 75 Acres, LLC v. Miami-Dade Cnty., 338 F.3d 1288, 1292 (11th Cir. 2003)).

Plaintiffs do not dispute that they received some form of process. They argue that the process was defective. See Atkins v. Parker, 472 U.S. 115, 130 (1985); accord Rea v. Matteucci, 121 F.3d 483, 485 (9th Cir. 1997) ("[A]n individual claiming a defect in the legislative process might have a claim for due process violations."). Plaintiffs argue that, by the close of labor negotiations, the City had agreed not to change existing wages and benefits, although it planned to introduce a 4.6% wage reduction. Plaintiffs argue that the City's bad-faith intention to reduce salaries made the subsequent legislative process defective.

Plaintiffs' argument does not resonate in this Circuit. If a legislative act applies generally, "the legislative process provides all the process that is constitutionally due." See Smith, 641 F.3d at 217 (citation and internal quotation marks omitted). That the City allegedly reduced its employees' salaries in bad faith is not germane. The Sixth Circuit has concluded that budgetary decisions apply generally. Therefore, Plaintiffs received the process that was constitutionally due them. Id. Their Fourteenth Amendment claim is not likely to succeed on the merits.

### 3. The Impasse Ordinance

Plaintiffs submit that the Court need not address whether the MOU is enforceable under Tennessee law because they have

established sufficient grounds for relief under the First and Fourteenth Amendments. The Court has decided that they are not entitled to a preliminary injunction on those grounds. Therefore, Plaintiffs must demonstrate the likelihood that the MOU is enforceable under Tennessee law.

"The State of Tennessee uses Dillon's Rule as a canon of statutory construction when determining the authority of a municipality." Smith, 641 F.3d at 218 n.10. Under that rule, "a municipal government has 'authority to act only when . . . the power is granted in the express words of a statute, private act, or charter creating the municipal corporation." Id.; see also Local 760, 2000 Tenn. App. LEXIS 792, at *6 ("It is well resolved under Tennessee law that municipalities may exercise only those express or necessarily implied powers delegated to them by the Legislature in their charters or under statutes.") Plaintiffs rely on Ordinance 2766 of the Memphis City Charter, which directs the Memphis City Council to enact procedures ensuring "that all negotiation of employment agreements between the City of Memphis and its employees be conducted in a spirit of good faith and with the intent to reach an equitable agreement in a reasonable period of time." Ordinance 2766 was adopted by referendum under the City's "Home Rule" jurisdiction pursuant to Article XI, § 9 of the Tennessee Constitution. When a city adopts Home Rule, it is subject only to "general act[s]

of the General Assembly mandatorily applicable to municipalities." Civil Service Merit Bd. v. Burson, 816 S.W.2d 725, 728-29 (Tenn. 1991). Plaintiffs argue that the MOU is enforceable because it was authorized by the Impasse Ordinance, adopted under Home Rule.

Plaintiffs' argument challenges the line of cases that have invalidated municipal collective bargaining agreements in Tennessee. See, e.g., Kraemer, 189 F. App'x at 364 (the plaintiff "had no right to file a grievance under the MOU because municipalities cannot enter into enforceable collective bargaining agreements under Tennessee law."). As Plaintiffs conceded during the November 9 hearing, this issue is one of first impression. (See Hr'g Tr. 154:18-19, ECF No. 42.) No court, whether at the state or federal level, has addressed whether labor agreements are enforceable in Tennessee when municipal charters expressly permit collective bargaining. Preliminary injunctions are inappropriate when courts are presented with issues of first impression. See Lorenzo, 241 F.3d at 808 (emphasizing that preliminary injunctions should not be issued in "cases which are doubtful or do not come within well-established principles of law.").

### B. Other Preliminary Injunction Factors

#### 1. Irreparable Harm

Plaintiffs argue that they have demonstrated a likelihood of success on the merits, which leads to a conclusion of irreparable harm. Plaintiffs are correct that, "if it is found that a constitutional right is being threatened or impaired, a finding of irreparable injury is mandated." Lorenzo, 241 F.3d at 809 (citing Burns, 427 U.S. at 373). The Court has not concluded, however, that Plaintiffs' constitutional rights are being threatened. Therefore, a finding of irreparable injury is not mandated.

Plaintiffs argue that they will be irreparably harmed because the City might not be capable of paying the 4.6% by which salaries were reduced. Plaintiffs analogize this case to a recent dispute between the City and the Memphis City Schools, in which the City lacked the money to fund the city school system, even after the courts had ordered payment.

Irreparable harm must be "actual and imminent," not "speculative or unsubstantiated." Abney v. Amgen, Inc., 443 F.3d 540, 552 (6th Cir. 2006). Plaintiffs provide no concrete evidence that the City would be unable to satisfy its financial obligations under the MOU if the Court should require the City to pay. Plaintiffs' supporting affidavits are silent on this issue. "Mere injuries, however substantial, in terms of money, time, and energy necessarily expended in the absence of a stay, are not enough. The possibility that adequate compensatory or

other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." Sampson v. Murray, 415 U.S. 61, 90 (1974). Where money damages can remedy harms, injunctive relief is disfavored. See Brake Parts, Inc. v. Lewis, No. 10-6531, 2011 U.S. App. LEXIS 16720, at *5 (6th Cir. Aug. 11, 2011); Johnson v. City of Memphis, No. 10-5252, 2011 U.S. App. LEXIS 21941, at *11 (6th Cir. Oct. 28, 2011); Basicomputer Corp. v. Scott, 973, F.2d 507, 511 (6th Cir. 1992) ("The defendants correctly point out that a plaintiff's harm is not irreparable if it is fully compensable by money damages.") Irreparable harm is neither imminent nor actual.

## 2. Substantial Harm to Others

Plaintiffs argue that an injunction would not substantially harm others. They contend that the City has the ability to pay the 4.6% arrearage by adjusting its budget or drawing on its reserve fund. In response, the City argues that the 4.6% wage reduction was a direct result of the City's financial crisis. The City has submitted affidavit evidence to demonstrate harm. (See Roland McElrath Aff. 2-6, ECF No. 41-1.) After considering evidence and arguments presented by both parties, the Court finds that this factor weighs against granting a preliminary injunction. See Abney, 443 F.3d at 552 (affirming a district court's decision not to grant a preliminary injunction because

22

there was conflicting evidence in the record). A preliminary injunction has the potential to harm others, particularly those who might find their share of the City budget reduced or their employment threatened to compensate for the preliminarily restored 4.6%.

### 3. Public Interest

Plaintiffs argue that an injunction would advance the public interest because it would be consistent with Memphis City Ordinance No. 2766. That ordinance provides, in relevant part, that "the people of the City of Memphis desire that all negotiation of employment agreements between the City of Memphis and its employees be conducted in a spirit of good faith and with the intent to reach an equitable agreement in a reasonable period of time. . . ." Plaintiffs contend that the Impasse Ordinance was enacted to reflect the public's will, as stated in Ordinance No. 2766. Plaintiffs argue that a preliminary injunction would maintain harmonious labor relations between the City and its employees and restore the public's trust. The City argues that enjoining the pay reduction would force the City to reduce its workforce, eliminate services, and cause significant interruption or delay in providing services. The City contends that the impact of the injunction would be felt by all its citizens.

"[W]here the public interest lies [] is dependent on a determination of the likelihood of success on the merits." Connection Distrib. Co., 154 F.3d 281 at 288. It is always in the public interest to prevent the violation of constitutional rights. See id. The Court has concluded that Plaintiffs' constitutional claims are not likely to succeed. Although Ordinance 2766 expresses the will of the voters to permit collective bargaining, the enforceability of the Impasse Ordinance and the MOU are open questions. A preliminary injunction would be an inappropriate remedy given that uncertainty.

**V.   Conclusion**

For the foregoing reasons, Plaintiffs' Motion for Preliminary Injunction is DENIED.

So ordered this 28th day of September, 2012.


_/s Samuel H. Mays, Jr._____
SAMUEL H. MAYS, JR
UNITED STATES DISTRICT JUDGE