IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

---

AMERICAN FEDERATION OF STATE,   )
COUNTY, MUNICIPAL EMPLOYEES      )
LOCAL 1733, et. al,              )
                                 )
    Plaintiffs,                  )
                                 )
v.                               )         No. 11-2577
                                 )
CITY OF MEMPHIS and A C          )
WHARTON, JR., in his             )
individual capacity,             )
                                 )
    Defendants.                  )

---

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS
TO DISMISS

---

This action is brought against the City of Memphis (the "City") and City Mayor A C Wharton, Jr. ("Wharton") in his individual capacity (collectively, "Defendants") by Plaintiffs American Federation of State, County, Municipal Employees Local 1733; Communication Workers of America Local 3806; International Association of Fire Fighters Local 1784; International Association of Machinists and Aerospace Workers Lodge 3; International Brotherhood of Electrical Workers Local 474; International Union of Bricklayers and Allied Craftworkers Local 5; International Union of Operating Engineers Local 369; Memphis Police Association; Operative Plasterers and Cement Masons

International Association Local 908; Painters and Allied Trades Local 49; United Association of Plumbers, Pipefitters and Sprinkler Fitters Local Union No. 17; United Brotherhood of Carpenters Local 345; United Union of Roofers, Waterproofers and Allied Workers Local 115 (collectively, the "Unions"); and Essica Littlejohn, in her individual capacity and as representative for all others similarly situated (together with the Unions, "Plaintiffs"). (See Sec. Am. Supp. Compl., ECF No. 67) (the "Second Amended Supplemental Complaint.")

Plaintiffs bring suit under 42 U.S.C. § 1983, alleging that Defendants' unilateral implementation of a wage reduction violated municipal employees' rights under the First and Fourteenth Amendments to the United States Constitution, and under § 5-4-13 of the City of Memphis Code of Ordinances (the "Impasse Ordinance"). Plaintiffs seek monetary, injunctive, and declaratory relief.

On July 11, 2011, Plaintiffs filed the original complaint. (Compl., ECF No. 1.) Plaintiffs sought and obtained leave to file an Amended Complaint. (ECF No. 49.) On February 14, 2012, the City filed a motion to dismiss the Amended Complaint. (Mot. to Dismiss Am. Compl., ECF No. 51.). On March 19, 2012, Plaintiffs sought and obtained leave to file a Supplemental Complaint. (Mot. for Supp. Am. Compl., ECF No. 54.) On March 23, 2012, the Court granted Plaintiffs' request. (ECF No. 57.)

2

On March 26, 2012, Plaintiffs moved for leave to file the Second Amended Supplemental Complaint. (Mot. for Sec. Am. Compl., ECF No. 59.) At a scheduling conference on May 2, 2012, the Court granted Plaintiffs' motion for leave to file the Second Amended Supplemental Complaint and denied all pending motions to dismiss as moot. (ECF No. 74.) The Second Amended Supplemental Complaint was entered on May 4, 2012, and added Wharton as a party.

Before the Court are Defendants' Motions to Dismiss. (City's Mot. to Dismiss Sec. Am. Supp. Compl., ECF No. 75); (City of Memphis' Mem. in Supp. of Mot. to Dismiss, ECF No. 75-1) ("City's Mem."); (Wharton's Mot. to Dismiss, ECF No. 76); (Mem. in Supp. of Mayor A C Wharton, Jr.'s Mot. to Dismiss, ECF No. 76-1) ("Wharton's Mem.").) The City seeks to dismiss Plaintiffs' claims under the First and Fourteenth Amendments and the Impasse Ordinance. Wharton seeks to dismiss Plaintiffs' claims against him in his individual capacity on qualified immunity grounds. Plaintiffs responded to Defendants' Motions on July 5, 2012. (Resp. in Opp. to Mot. to Dismiss, ECF No. 78) ("Pls.' Resp.").) Defendants replied on July 23, 2012. (Wharton's Rep. to Pls.' Resp., ECF No. 79); (City's Rep. to Pls.' Resp., ECF No. 80.) For the following reasons, Defendant's Motions are GRANTED in part and DENIED in part.

   **I.    Background**

The Unions represent more than 5,000 City employees in collective bargaining negotiations with the City. (See Sec. Am. Supp. Compl. ¶¶ 21-22.)   Plaintiffs allege that, in October 2010, the City notified Union leaders of its intent to negotiate changes to the Memorandum of Understanding ("MOU") governing the City's employment conditions with municipal employees.   (Id. ¶ 36.)   The Unions and the City began negotiating in February 2011 and reached mutually agreeable terms in March 2011.   (Id. ¶¶ 37-39.)   Plaintiffs allege that, after those terms had become the final MOU on April 1, 2011, the City violated the MOU on June 27, 2011, by reducing wages, eliminating certain benefits, and offering "buy out" packages to some employees. (Id. ¶¶ 39-48.) Plaintiffs allege that the City's actions violated their constitutional rights and Section 5-4-13 of the City Ordinances. (Id. ¶¶ 49-62.)

On November 7, 1978, City voters adopted by referendum Ordinance No. 2766, which required the Memphis City Council to "set up procedures for arbitration of economic issues of municipal labor disputes."   (Id. ¶¶ 31-32.)   The City subsequently adopted the Impasse Ordinance, which establishes arbitration procedures if "total impasse" occurs between the City and its employees. (Id. ¶ 31.)  "Total impasse" is the point during negotiations when "each party declares its last

position in economic matters to be final and each party declares such position to be unacceptable, or the parties do not reach agreement by midnight of the negotiations deadline." § 5-4-13(A)(1).

If total impasse lasts for seven days, § 5-4-13 directs each party to submit its "last best offer" to a three-member impasse resolution committee appointed by the City Council. Id. § 5-4-13(B)(1). The committee investigates each party's proposal and recommends final MOU terms for consideration by the City Council. Id. § 5-4-13(B)(2)-(5). The City Council can adopt the committee's recommendations in their entirety or hold a hearing. Id. § 5-4-13(6). Each party is given an hour to summarize its position. Id. The Unions and the City have allegedly followed these procedures since 1978 and have negotiated MOUs that "control the terms and conditions of the employees represented by the Unions." (Sec. Am. Supp. Compl. ¶ 35.)

Defendants purportedly violated its employees' First Amendment petition rights by failing to present the MOU's final economic proposals to the City Council. (Id. ¶ 53-54.) Reducing workers' salaries without following the impasse procedures in § 5-4-13 allegedly denied Plaintiffs the opportunity to seek redress. (Id. ¶ 52.) Plaintiffs contend that the Impasse Ordinance specifies that, if there is no

impasse before the final day of negotiations, a deal is reached and the terms agreed between the Unions and the City constitute the final MOU. (Id. at ¶ 51-52.)

Plaintiffs allege that the City violated its employees' Fourteenth Amendment rights by unilaterally reducing the compensation and benefits of its employees in violation of the economic terms of the MOU. (Id. ¶ 52.) Plaintiffs assert that City employees have a "legitimate claim of entitlement to [] economic terms determined pursuant to the [I]mpasse [O]rdinance and documented in the [MOU]." (Id. ¶ 58.) Plaintiffs allege that the MOU prohibited wage adjustments for one year. (Id. ¶ 57.) They allege that the City violated their due process rights when it reduced wages before the one-year deadline. (Id. ¶ 59.)

Plaintiffs allege that the City violated the terms and conditions of the MOU. (Id. ¶ 61.) They seek a declaratory judgment that the City has violated the Impasse Ordinance.

## II. Jurisdiction

The Court has subject matter jurisdiction under 28 U.S.C. § 1331 because Plaintiffs' Complaint raises federal questions under 42 U.S.C. § 1983. The City disputes jurisdiction. It argues that the Second Amended Supplemental Complaint asserts no cognizable claims under the First or Fourteenth Amendments, and without those claims, there is no basis for federal

jurisdiction.    The  City's  argument  puts  the  cart  before  the
horse.    The  Second  Amended  Supplemental  Complaint  alleges
constitutional  violations  under  the  First  and  Fourteenth
Amendments,  which  is  "sufficient  to  invoke  federal  question
jurisdiction  pursuant  to  28  U.S.C.  §  1331."   Janis v. Ashcroft,
348  F.3d  491,  493  (6th  Cir.  2003);  (see also  Sec.  Am.  Supp.
Compl. ¶¶ 49-59.)   The  Court  has  jurisdiction.

The  Court  has  supplemental  jurisdiction  over  Plaintiffs'
claim  for  declaratory  relief  because  it  derives  from  the  same
"common  nucleus  of  operative  fact"  as  Plaintiffs'  federal
claims.   See  28 U.S.C. § 1367(c);  United Mine Workers of Am. v.
Gibbs, 383 U.S. 715, 725 (1966).

### III. Standard of Review

In  addressing  a  motion  to  dismiss  for  failure  to  state  a
claim  under  Federal  Rule  of  Civil  Procedure  12(b)(6),  the  court
must  construe  the  complaint  in  the  light  most  favorable  to  the
plaintiff  and  accept  all  well-pled  factual  allegations  as  true.
League  of  United  Latin  Am.  Citizens  v.  Bredesen,  500  F.3d  523,
527  (6th  Cir.  2007).    A  plaintiff  can  support  a  claim  "by
showing  any  set  of  facts  consistent  with  the  allegations  in  the
complaint."   Bell  Atlantic  Corp.  v.  Twombly,  550  U.S.  544,  563
(2007).    This  standard  requires  more  than  bare  assertions  of
legal  conclusions.   Bovee  v.  Coopers  &  Lybrand  C.P.A.,  272  F.3d
356,  361  (6th  Cir.  2001).    "[A]  formulaic  recitation  of  the

elements of a cause of action will not do." <u>Twombly</u>, 550 U.S. at 555. Any claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." <u>Erickson v. Pardus</u>, 551 U.S. 89, 93 (2007) (<u>per curiam</u>). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" <u>Id.</u> (quoting <u>Twombly</u>, 550 U.S. at 555).

Nonetheless, a complaint must contain sufficient facts "to 'state a claim to relief that is plausible on its face'" to survive a motion to dismiss. <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949 (2009) (quoting <u>Twombly</u>, 550 U.S. at 570). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." <u>Id.</u> (citing <u>Twombly</u>, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Id.</u> at 1949 (citation omitted). A plaintiff with no facts and "armed with nothing more than conclusions" cannot "unlock the doors of discovery." <u>Id.</u> at 1950.

## IV. Analysis

The City argues that: 1) Plaintiffs do not assert cognizable claims under 42 U.S.C. § 1983 for violations of the First and Fourteenth Amendments; (2) the Court lacks subject-

matter jurisdiction; and (3) Plaintiffs have failed to state a claim under § 5-4-13 of the Code of Ordinances because the MOU entered into by the Unions and the City is unenforceable under Tennessee law.

Wharton argues that he has qualified immunity.

### A. § 1983 Claims

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding to redress." 42 U.S.C. § 1983.

The City alleges that the "Impasse Ordinance is not a federal right, privilege, or immunity" and that Plaintiffs' § 1983 claims under the First and Fourteenth Amendments must be dismissed for failure to state a claim. (Def.'s Mem. 3.)

### 1. The First Amendment

"Congress shall make no law respecting . . . the right of the people . . . to petition the Government for a redress of grievances." U.S. Const. amend. I. During the Congressional debates on the First Amendment, James Madison said that the Petition Clause was drafted so "people '[could] communicate their will' through direct petitions to the legislature and

government officials." McDonald v. Smith, 472 U.S. 479, 482 (1985) (citing 1 Annals of Cong. 738 (1789)). Implicit in "the very idea of [republican] government," protected petitions are "assurance[s] of a particular freedom of expression" whose roots "antedate the Constitution." Id. (quoting United States v. Cruikshank, 92 U.S. 542, 552 (1876)).

Petition Clause challenges are analyzed within the same framework as claims arising under the First Amendment's Speech Clause. See Campbell v. PMI Food Equip. Group, Inc., 509 F.3d 776, 789 (6th Cir. 2007). Only petitions trigger First Amendment protections. Holzemer v. City of Memphis, 621 F.3d 512, 521 (6th Cir. 2010). To state a valid cause of action, the threshold inquiry is "'whether the plaintiffs' conduct deserves constitutional protection.'" Id.

"[W]hen one files a 'petition' one is addressing government and asking government to fix what, allegedly, government has broken or has failed in its duty to repair." Id. (quoting Foraker v. Chaffinch, 501 F.3d 231 (3d Cir. 2007), overruled on other grounds by Borough of Duryea v. Guarnieri, 131 S. Ct. 2488, 2491 (2011)). Petitions to "all departments of the Government" are protected. Id. Formal petitions are defined by their invocation of an official mechanism of redress. See id.

10

Plaintiffs allege that the procedures in the Impasse Ordnance, under which the parties negotiated the MOU, are formal mechanisms of redress to the Memphis City Council. (Sec. Am. Supp. Compl. ¶¶ 50-51.) If, upon total impasse, negotiations cease because of material differences in the parties' final economic proposals, the City Council is required to accept the economic terms proposed by at least one of the negotiating parties. (Id. ¶ 51.) "The Council cannot modify the terms of either proposal." (Id. ¶ 51.)

The gravamen of Plaintiffs' First Amendment claim is that Defendants' actions were calculated maneuvers to avoid total impasse, which limited the breadth and depth of review before the City Council. Plaintiffs base their allegations on Defendants' representations that negotiations had successfully concluded and that wages would not be reduced, which Plaintiffs claim induced their reasonable reliance. (Id. ¶ 35, 52.)

The procedures established in the Impasse Ordinance are a protected form of speech. "The Supreme Court has found informal letters to the President, a protest including placards and singing, and a publicity campaign 'ostensibly directed toward influencing government action' to constitute protected petitioning activity." Holzemer, 621 F.3d at 521 (citations omitted); see also McDonald, 472 U.S. at 485; Eastern R.

11

Presidents Conference v. Noerr Motor Freight, Inc., 365 U.S. 127, 144 (1961); United Mine Workers v. Pennington, 381 U.S. 657, 670 (1965) (the Petition Clause protects "a concerted effort to influence public officials."). Plaintiffs have also alleged that Defendants deprived them of the procedures under the Impasse Ordinance. Plaintiffs' allegations "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Twombly, 550 U.S. at 555.

A well-pled action, however, must also state a claim to relief that is plausible on its face. Iqbal, 129 S. Ct. at 1949. Defendants argue that Plaintiffs' First Amendment claim fails because the First Amendment does not encompass the redress of grievances in a specific manner or guarantee the adequacy of an established mechanism of redress. Plaintiffs argue that they do not rely on the inadequacy of the Impasse Ordinance, but rather on actions that prevented the Impasse Ordinance from functioning as it was designed.

The Petition Clause protects the communication of "direct petitions to the legislature and government officials." McDonald, 472 U.S. at 482 (internal citation and quotation marks omitted). A public employee "surely can associate, and speak freely and petition openly, and he is protected by the First Amendment." Minn. State Bd. of Comm. Colleges. v. Knight, 465

U.S. 271, 313 (1984) (citing <u>Pickering v. Board of Education</u>, 391 U.S. 563, 574-75 (1968)). The Petition Clause prohibits the government from implementing "a general prohibition against certain forms of advocacy" or "imposing sanctions for the expression of particular views it opposes." <u>Smith v. Arkansas State Highway Employees</u>, 441 U.S. 463, 464 (1979). However, the Right to Petition is not "infringed when government simply ignores that person [or group] while listening to others." <u>Knight</u>, 465 U.S. at 315.

The Impasse Ordinance's procedures, considered in their entirety, establish a system for negotiating and resolving employment terms between the City and labor organizations. The Unions and the City successfully negotiated an MOU under the Impasse Ordinance, but the City Council adopted a budget inconsistent with the MOU. Plaintiffs argue they were denied access to the Impasse Ordinance's procedures, but the facts pled do not establish that the Impasse Ordinance's procedures were implicated. Total impasse triggers review by the City Council in the manner sought, <u>see</u> § 5-4-13(B), but total impasse was not declared. Nothing in the Impasse Ordinance provides that its procedures must be followed in the absence of total impasse. The Petition Clause does not guarantee a "formal mechanism of redress" if the procedures triggering that formal mechanism never occur. <u>Cf.</u> <u>Smith</u>, 441 U.S. at 464-466 (the Arkansas State

13

Highway Commission's refusal to consider employee grievances when filed by the union rather than the employee did not violate the Petition Clause).

The Unions and the City employees had the right and the opportunity to petition the City Council during the budget process. "When government makes general policy, it is under no greater constitutional obligation to listen to any specially affected class than it is to listen to the public at large." Knight, 465 U.S. at 287. When the City and the Unions executed the MOU and it was presented to the City Council, Plaintiffs were entitled to open access to the City Council's proceedings just as "the public at large." The City Council was under no obligation to listen to or agree with those who petitioned. Id. at 315.

Plaintiffs argue that these circumstances are distinguishable from those addressed in the cases on which Defendants rely. Plaintiffs argue that Smith and Knight are inapposite because they addressed statutory schemes functioning as intended, rather than actions like the Defendants', which allegedly were undertaken to circumvent the Impasse Ordinance. (Pls.' Resp 13) ("None of those cases arose in the context of a governmental entity affirmatively preventing parties from

14

seeking redress through procedures specifically tailored for that purpose.")

As a threshold matter, Plaintiffs' argument is not consistent with their allegations. Plaintiffs allege that: (1) the parties negotiated and executed the MOU in March and April 2011; (2) Defendants subsequently proposed a budget that did not incorporate the MOU; and (3) the City Council adopted a budget that incorporated a 4.6% pay reduction for all municipal employees. (Sec. Am. Supp. Compl. ¶¶ 38-44.) Even accepting all of Plaintiffs' allegations as true and resolving all inferences in their favor, it is impossible to conclude that Defendants "affirmatively" prevented Plaintiffs from seeking redress under the Impasse Ordinance. Plaintiffs' allegations establish that, at some point between April and June 2011, circumstances changed such that the MOU's economic proposals were not incorporated into the proposed budget. That does not mean that Defendants "affirmatively" prevented Plaintiffs from using the Impasse Ordinance or petitioning the City Council.

Even if Plaintiffs' arguments and allegations aligned, Smith and Knight would apply. Smith addressed whether a public employees' union's First Amendment rights were violated when the public employer required employees' grievances to be filed directly with the employer and refused to consider the union's

communications.  441 U.S. at 464-66.  Knight addressed a state law that gave a union exclusive bargaining rights with the state to the exclusion of individuals who refused to join the union. See 465 U.S. at 274.  In each case, the Supreme Court declined to find a constitutional violation, reasoning that, because the government had neither implemented general prohibitions on nor imposed sanctions for petitioning, the government's strong interest in legislative discretion took precedence over an individual's preferred method of petitioning.  Smith, 441 U.S. at 464; see also Knight, 465 U.S. at 287.  Plaintiffs' claim that Defendants' actions prevented the Impasse Ordinance from functioning as intended is subordinate to the City Council's budgetary priorities.  When the Council established those priorities, Plaintiffs had and exercised the opportunity to petition the Council.

Plaintiffs also attempt to distinguish cases focusing on time and place restrictions under the First Amendment, and not the Petition Clause specifically.  The Sixth Circuit has stated that First Amendment claims under the Petition Clause are analyzed within the Free Speech framework.  Campbell, 509 F.3d at 789.  Thus, although addressing different dimensions of the First Amendment, the legal framework is the same.

Plaintiffs allege that impasse was never invoked because they "reasonably relied on the City's execution of the Memoranda, as well as the provisions of the impasse ordinance, to accept the negotiations as successfully concluded." (Sec. Am. Supp. Compl. ¶ 45.) Plaintiffs' claim is implausible. The First Amendment "protects the right of an individual to . . . petition his government for redress of grievances." Knight, 465 U.S. at 286 (citing Smith, 441 U.S. at 464). The City has not infringed that right. The Petition Clause does not function as Plaintiffs allege. Although they were unable to use the Impasse Ordinance, they were not precluded from petitioning the City Council to challenge the City's budget measures. Plaintiffs' First Amendment claim is DISMISSED.

## 2. The Fourteenth Amendment

The City argues that: (1) Plaintiffs do not have a protectible property interest in the economic terms of the MOU; (2) the adoption of the 2011-2012 budget did not violate the City's ordinances; and (3) Plaintiffs were afforded due process.

The Fourteenth Amendment states that "no . . . State . . . shall deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, § 1. "Property interests are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or

17

understandings that stem from an independent source[,] such as state law . . . rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." Bd. of Regents v. Roth, 408 U.S. 564, 577 (1972); accord Aldridge v. City of Memphis, 404 F. App'x 29, 34-35 (6th Cir. 2010). The independent source may be a statute, policy, practice, regulation, or guideline. Woolsey v. Hunt, 932 F.2d 555, 564 (6th Cir. 1991). "The rules and understandings need not be a formal [] system or even an explicit contractual provision," but agreements implied from the defendants' words and conduct in light of the surrounding circumstances. Id.; see also Aldridge, 404 F. App'x at 34-35 ("Such independent sources include state statutes and regulations, explicit contractual guarantees, or even "agreements implied from 'the [defendants'] words and conduct in the light of the surrounding circumstances . . . .'") (quoting Perry v. Sinderman, 408 U.S. 593, 602 (1972)). If the interest is recognized by state law, "the employee possesses a property interest of which the state employer cannot deprive the employee without providing due process." Lisle v. Metro Gov't of Nashville, 73 F. App'x 782, 785 (6th Cir. 2003).

Plaintiffs allege that the Impasse Ordinance creates a property interest violated by the 4.6% reduction in employee salaries. Plaintiffs' claim "hinges on whether anything in

18

Tennessee statute, common law, or regulation creates [a property] interest[,]" or whether the surrounding circumstances highlight policies, practices, or understandings that create property rights.  See Aldridge, 404 F. App'x at 35 (quoting Lisle, 73 F. App'x at 785); see also Woolsey, 932 F.2d at 564.

Tennessee law specifically permits municipal collective bargaining only for transit workers.  See Tenn. Code. Ann. § 7-56-101.  Tennessee has no general statutory provision authorizing municipalities to engage in collective bargaining. See Kraemer v. Luttrell, 189 F. App'x 361, 365 (6th Cir. 2006); see also Fulenweider v. Firefighters Ass'n Local Union 1784, et al., 649 S.W.2d 268, 270 (Tenn. 1982).  Since Weakley Cnty. Mun. Elec. Sys. v. Vick, 309 S.W.2d 792, 800-05 (Tenn. Ct. App. 1957), held that collective agreements were unenforceable, Tennessee courts have noted that labor agreements may be permitted by municipal charters.  See Simerly v. City of Elizabethton, No. E2009-01694-COA-R3-CV, 2011 Tenn. App. LEXIS 1, *31-32 (Tenn. Ct. App., Jan. 5, 2011) ("[A] municipality cannot enter into an enforceable collective bargaining agreement with its employees absent some express authority granted by a municipal charter or state statute.") (emphasis added).

"A property interest in employment can [] be created by ordinance." Bishop v. Wood, 426 U.S. 341, 344-45 (1976).  The

19

Memphis City Council passed the Impasse Ordinance after the City Charter had been amended to permit collective bargaining. (See Sec. Am. Supp. Compl. ¶¶ 30-31.) The City and the Unions allegedly negotiated the MOU under the Impasse Ordinance. (Id. ¶ 37.) Plaintiffs contend that the MOU included benefits, salaries, wages, and other forms of compensation. (Id. ¶ 38.) Those terms were to remain unchanged "during their effective period[,]" and the parties were permitted to reopen negotiations after one year to negotiate wages. (Id.) Before the one-year period expired, the City reduced employees' wages by 4.6% and eliminated death benefits paid to families of active and retired employees. (Id. ¶ 40.) Accepting those facts in the light most favorable to the Plaintiffs, Plaintiffs "possess a property interest [that the City] cannot deprive . . . without providing due process." Lisle, 73 F. App'x at 785.

The dimensions of property rights may be defined by informal "understandings" and practices. See Roth, 408 U.S. at 577; see also Woolsey, 932 F.2d at 564. Plaintiffs claim to "have followed the procedures established by the [I]mpasse [O]rdinance to negotiate the [MOU] that control[s] the terms and conditions of the employees represented by the Unions." (Comp. ¶ 34.)

20

Plaintiffs' claim must be plausible.  The City contends that Plaintiff's claim is implausible because any MOU executed before the adoption of a budget is contrary to the City Charter and therefore ultra vires.  In other words, although the City, by and through Wharton, mutually agreed with the Unions on economic and non-economic terms, Wharton lacked authority under the City Charter to bind the City to the economic terms in the MOU.  Consequently, the City argues that the Court need not decide whether the non-economic provisions of the MOU are enforceable collective bargaining agreements.

Central to the City's argument is Tennessee's characterization of the balance between municipal charters and ordinances.  "It is well settled in Tennessee that a municipal charter is mandatory, taking precedence over ordinances and limiting the actions of the municipality's agents, who must follow the charter."  Fox v. Miles, 164 S.W.3d 593, 598 (Tenn. Ct. App. 2004); see also City of Lebanon v. Baird, 756 S.W.2d 236, 241 (Tenn. 1998) ("The charter is the organic law of the municipality to which all its actions are subordinate.").

Under the City Charter, "all contracts requiring the disbursement of funds shall be limited in an amount not in excess of that provided in the appropriate budget, either operations or capital fund."  Charter of the City of Memphis No.

1852 § 14.  The Mayor prepares and submits proposed budgets to "the Council, which shall approve or amend any and all said budgets prior to the adoption of a tax rate as now provided, and said budgets as approved or as amended shall be the duly established budgets."  Id. § 12.

Relying on those provisions and Allmand v. Pavletic, 292 S.W.3d 618 (Tenn. 2009), Defendants argue that the economic terms of the MOU are ultra vires and unenforceable because they exceeded the Mayor's authority.  Stated differently, because the wage provision in the MOU was greater than the amount provided in the final budget, the MOU is unenforceable, and Plaintiffs have no protectable property interest.

In Allmand, the Tennessee Supreme Court stated that a municipal action may be declared ultra vires because "the action was wholly outside the scope of the city's authority under its charter or a statute, or . . . because the action was not undertaken consistent with the mandatory provisions of its charter or a statute."  292 S.W.3d at 626 (citation omitted).  A municipality acts legally when "(1) the power is granted in the 'express words' of the statue, private act, or charter creating the municipal corporation; (2) the power is 'necessarily or fairly implied in, or incidental to the powers granted'; or (3) the power is one that is neither expressly granted nor fairly

implied from the express grants of power, but is otherwise
implied 'as essential to the declared objects and purposes of
the corporation.'" Id. at 627 (quoting Arnwine v. Union Cnty.
Bd. of Educ., 120 S.W.3d 804, 807-08 (Tenn. 2003)).

Section 14 of the City Charter expressly provides "that the
power to contract . . . shall remain with the Mayor," subject to
financial constraints in the final budget.  Section 12 requires
the Mayor to prepare and submit a budget to the City Council.
Charter of the City of Memphis No. 1852 § 12.  The Mayor's
authority to contract is "necessarily or fairly implied in"
Ordinance No. 2766, which provides that the City Council must
establish "procedures for arbitration or economic issues of
municipal labor disputes."  Those procedures were established in
the Impasse Ordinance.

Plaintiffs allege that the parties negotiated and executed
the MOU under the Impasse Ordinance, an exercise that has been
undertaken for at least three decades.  (Sec. Am. Supp. Compl. ¶
35.)  Wharton was ultimately responsible for negotiating the MOU
and preparing the budget.  The MOU is not ultra vires because,
at a minimum, Wharton's power to negotiate was "necessarily or
fairly implied" from his statutory duty to prepare a budget.  "A
property interest in employment can [] be created by ordinance."
Bishop, 426 U.S. at 344-34.  If long-term financial obligations

23

were not included in a final budget, from salaries to leases to bond indebtedness, those obligations would be "in excess" of the budget and void.   Under Defendants' logic, individuals would have no property interest in those long-term obligations, meaning that due process claims related to the negotiation of public contracts would effectively be foreclosed.

The law does not allow that conclusion.   Protectible property interests can arise from many sources, from formal agreements and statutes to more ephemeral sources like words, understandings and circumstantial conduct.   See Woolsey, 932 F.2d at 564.   Plaintiffs' due process claim is anchored in the concrete and the ephemeral.   It is plausible.

### B.   Section 5-4-13

Defendants argue that Tennessee law forbids employees and unions from engaging in collective bargaining.   Plaintiffs respond that Memphis is a "Home Rule" jurisdiction that has explicitly permitted collective bargaining under § 5-4-13. Plaintiffs seek a declaration that the City's reduction of municipal salaries violated the express terms of § 5-4-13. Plaintiffs have stated a valid cause of action.

Article XI, Section 9 of the Constitution of the State of Tennessee provides, in relevant part:

24

> Any municipality may by ordinance submit to its qualified voters in a general or special election the question: "Shall this municipality adopt home rule?"
>
> In the event of an affirmative vote by a majority of the qualified voters voting thereon, and until the repeal thereof by the same procedure, such municipality shall be a home rule municipality, and the General Assembly shall act with respect to such home rule municipality only by laws which are general in terms and effect.
>
> Any municipality after adopting home rule may continue to operate under its existing charter, or amend the same, or adopt and thereafter amend a new charter to provide for its governmental and proprietary powers, duties and functions, and for the form, structure, personnel and organization of its government, provided that no charter provision except with respect to compensation of municipal personnel shall be effective if inconsistent with any general act of the General Assembly and provided further that the power of taxation of such municipality shall not be enlarged or increased except by general act of the General Assembly. The General Assembly shall by general law provide the exclusive methods by which municipalities may be created, merged, consolidated and dissolved and by which municipal boundaries may be altered.

Tenn Const., Art. XI, Sec. 9.  Adopted in 1953 to "strengthen local self-government," the Home Rule Amendment vested control of local affairs in local government to the "maximum permissible extent." Civil Service Merit Bd. v. Burson, 816 S.W.2d 725, 728-29 (Tenn. 1991); Farris v. Blanton, 528 S.W.2d 549, 551 (Tenn. 1975).

The City of Memphis is a Home Rule jurisdiction.  Citizens of the City voted to adopt Home Rule by passing Ordinance No. 1852 in a referendum election on November 8, 1966.  The effect

of the City's referendum was "to fundamentally change the
relationship between the General Assembly and these types of
municipalities, because such entities now derive their power
from sources other than the prerogative of the legislature." S.
Constructors, Inc. v. Loudon Cnty. Bd. Of Educ., 58 S.W.3d 706,
714 (Tenn. 2001).   Under its Home Rule authority, the City
amended its Charter in 1978 to reflect that "the people of the
City of Memphis desire that all negotiation of employment
agreements between the City . . . and its employees be conducted
in a spirit of good faith and with the intent to reach an
equitable agreement in a reasonable period of time." (Compl. ¶
31.)   The City does not dispute that Memphis is a Home Rule
jurisdiction or that the 1978 Charter amendment permits
collective bargaining.

The City argues that Home Rule is not dispositive.   It
contends that, absent some express authority, local governments
lack the power to enter into collective bargaining agreements.
Fulenweider, 649 S.W.2d at 279.   The City submits that Tennessee
law does not expressly permit collective bargaining, see Weakley
Cnty., 309 S.W.2d at 800-05, and that Tennessee courts have
uniformly invalidated collective bargaining agreements between
local governments and labor organizations.   See Fulenweider, 649
S.W.2d at 270; Simerly, 2011 Tenn. App. LEXIS 1, at *31-32;
Local Union 760 of the IBEW v. City of Harriman, No. E2000-

26

00367-COA-R3-CV, 2000 Tenn. App. LEXIS 792, at *1-2 (Tenn. Ct. App. Dec. 8, 2000).   The Sixth Circuit has recognized Tennessee's strong public policy against collective bargaining. See Kraemer v. Luttrell, 189 F. App'x at 364 (the plaintiff "had no right to file a grievance under the MOU because municipalities cannot enter into enforceable collective bargaining agreements under Tennessee law."); see also Aldridge v. City of Memphis, 2009 U.S. Dist. LEXIS 36106, at *13 (W.D. Tenn. Apr. 28, 2009) ("[A] municipality cannot enter into an enforceable collective bargaining agreement with its employees absent some express authority granted by a municipal charter or state statute.").

Although the City is correct that no Tennessee authorities have upheld collective bargaining agreements, the issue before the Court is one of first impression.   The authorities on which the City relies do not address counties and municipalities that have expressly permitted collective bargaining under Home Rule authority.   See Kraemer, 189 F. App'x at 365 (Shelby County had not permitted collective bargaining under Home Rule); see also Simerly, 2011 Tenn. App. LEXIS 1, at *31-32 (municipal ordinances did not expressly permit collective bargaining).   The City's 1978 amendment to its Charter permits collective bargaining between the City and its employees. (Compl. ¶ 31.) The 1978 amendment is "express authority granted by a municipal

charter." <u>See</u> <u>Aldridge</u>, 2009 U.S. Dist. LEXIS 36106, at *13.
This is not a case in which the Court finds "nothing in the
Charter [] that either expressly or impliedly grants the City
[], . . . the power to engage in collective bargaining or to
enter into a collective bargaining agreement." <u>Local Union 760</u>
<u>of the IBEW</u>, 2000 Tenn. App. LEXIS 792, at *1-2.   Plaintiffs
have pled a cognizable claim.

### C.   Quantum Meruit and Promissory Estoppel

In their March 23, 2012 Response, Plaintiffs argue that
Defendants are liable under theories of promissory estoppel
and/or quantum meruit.   Plaintiffs' promissory estoppel and
quantum meruit claims do not appear in the Second Amended
Supplemental Complaint.   Indeed, they do not appear in any of
the pleadings before the Court.

Rule 8 of the Federal Rules of Civil Procedure states the
general rules for pleadings.   <u>See</u> Fed. R. Civ. P. 8(a)(2) ("A
pleading that states a claim for relief must contain . . . a
short and plain statement of the claim showing that the pleader
is entitled to relief.").   Rule 7 provides an exclusive list of
documents that qualify as pleadings.   <u>See</u> Fed. R. Civ. P. 7(a).
Legal memoranda are not included on that list.

"Under the well-settled doctrine of <u>inclusio unius,</u>
<u>exclusion alterius</u>, the listing of some things implies that all

things not included in the list were purposefully excluded."
Burns v. Lawther, 53 F.3d 1237, 1241 (11th Cir. 1995) (citation
omitted)); cf. United States v. Booth, 551 F.3d 535, 540 (6th
Cir. 2009) ("[T]he canon of construction expressio unius est
exclusio alterius, mean[s] the expression of one thing implies
the exclusion of another thing") (citation and internal
quotation marks omitted).  Because Plaintiffs have used legal
memoranda rather than the pleadings listed in Rule 7(a) to
introduce theories of quantum meruit and promissory estoppel,
those claims are not properly before the Court.  A memorandum
supporting a motion is not a "pleading" for purposes of Rule
7(a).  See, e.g., Lockert v. Faulkner, 574 F. Supp. 606, 609 n.3
(N.D. Ind. 1983) ("[A] memorandum in support of a motion is not
a 'pleading' for purposes of a binding judicial admission.");
see also Miller v. Brown & Williamson Tobacco Corp., 679 F.
Supp. 485, 487 (E.D. Pa. 1988) ("[N]either the pretrial
memorandum nor any filed or unfiled supplements to it are
pleadings").  Insofar as Plaintiffs seek to pursue claims of
quantum meruit and promissory estoppel, those claims are
DISMISSED.

    **D.  Qualified Immunity**

Plaintiffs bring suit against Wharton in his individual
capacity.  (Sec. Am. Supp. Compl. 2) ("Come now the Plaintiffs,

and hereby file their Second Amended Supplemental Complaint
against . . . Mayor A C Wharton, Jr. in his individual
capacity.") As a threshold matter, Plaintiffs do not bring suit
against Wharton in his official capacity. A suit against
Wharton in his official capacity would be a suit against the
City. See Hanner v. City of Dearborn Heights, 450 F. App'x 440,
446 (6th Cir. 2011) ("Any claim against the Mayor in his
official capacity is simply a claim against the City . . .
itself."). For Plaintiffs to state an independent cause of
action against Wharton, they must allege that he acted in his
individual capacity.

Wharton argues that he is entitled to qualified immunity
for actions taken in his individiual capacity. Qualified
immunity exists so that "government officials performing
discretionary functions generally are shielded from liability
for civil damages insofar as their conduct does not violate
clearly established statutory or constitutional rights of which
a reasonable person would have known." Harlow v. Fitzgerald,
457 U.S. 800, 818 (1982) (internal citations omitted).
Qualified immunity is an "immunity from suit rather than a mere
defense to liability; and like an absolute immunity it is
effectively lost if a case is erroneously permitted to go to
trial." Marvin v. Taylor, 509 F.3d 234, 243 (6th Cir. 2007)
(citation and internal quotation marks omitted). The Sixth

30

Circuit presumes that qualified immunity applies.  See Chappell v. City of Cleveland, 585 F.3d 901, 907 (6th Cir. 2009). Plaintiffs bear the burden of showing that a defendant is not entitled to qualified immunity.  Id.

The "requisites of a qualified immunity defense must be considered in proper sequence." Saucier v. Katz, 533 U.S. 194, 200 (2001).  The threshold question is, taken "in the light most favorable to the party asserting the injury, do the facts alleged show the [official's] conduct violated a constitutional right?"  Id. at 201 (citing Siegert v. Gilley, 500 U.S. 226, 232 (1991)).  "In the course of determining whether a constitutional right was violated on the premises alleged, a court might find it necessary to set forth principles which will become the basis for a holding that a right is clearly established."  Id. Whether a right is clearly established is determined "in light of the specific context of the case, not a broad general proposition; and it too serves to advance understanding of the law and to allow [officials] to avoid the burden of trial if qualified immunity is applicable."  Id.  The dispositive inquiry "is whether it would be clear to a reasonable [official] that his conduct was unlawful in the situation he confronted."  Id. at 202; see also DePiero v. City of Macedonia, 180 F.3d 770, 785-86 (6th Cir. 1999) ("[G]overnment officials acting in their official capacities are protected from being sued in their

individual capacities for damages if their actions did not violate clearly established statutory or constitutional rights of which a reasonable person would have known.") (citation and quotation marks omitted).

## 1. The First Amendment

To the extent Plaintiffs assert a Petition Clause violation against Wharton, the Court has decided that Plaintiffs' allegations do not make out a case for a constitutional violation. If no constitutional right is "violated [according to] the allegations established, there is no necessity for further inquiries concerning qualified immunity." Katz, 533 U.S. at 201.

## 2. The Fourteenth Amendment

The Court has decided that Plaintiffs have pled a Fourteenth Amendment violation. Qualified immunity turns on whether a reasonable official would have known that, in executing an MOU, Plaintiffs' due process rights would be violated if the terms of the MOU were not incorporated into the budget.

Plaintiffs argue that Wharton, as the public official responsible for executing contracts on behalf of the City, agreed to the economic terms of the MOU, which "avoided having to fight the Unions through the impasse procedure." (Pls.'

Resp. 11.)   Plaintiffs' argument tracks allegations in the Second Amended Supplemental Complaint, which states that Defendants, by "unilaterally proposing and implementing [a 4.6% reduction in pay] in conflict with the economic terms mutually agreed pursuant to the impasse ordinance, . . . deprived its employees of a property interest without due process." (Sec. Am. Supp. Compl. ¶ 59.)

Plaintiffs' briefs elaborate on the allegations. Plaintiffs argue that, when the MOU was executed, Wharton "was deliberately considering action to repudiate the agreed terms in the [MOU], but his representatives assured the Unions that there would be no changes in pay or benefits." (Pls.' Resp. 11-12.) The repudiation was Wharton's presentation of "a budget that specifically eliminated funding for the economic terms to which [Wharton] had just agreed." (Id. 12.) There are no allegations of deliberate conduct in the Second Amended Supplemental Complaint. Plaintiffs' due process allegation rests on Wharton's simple "fail[ure] to disclose during negotiations that [the City] would implement a 4.6% reduction in pay." (Sec. Am. Supp. Compl. ¶ 59.)

Plaintiffs base their claim on representations made during labor negotiations. (See Mar. 25, 2011 Labor Negotiations Tr. 61-64, ECF No. 44-1) ("Labor Negotiations Tr.") Plaintiffs

argue that the Court can rely on the March 25, 2011 transcript (the "March 25, 2011 Transcript") because it is a public record. They contend that the transcript confirms "the Unions' allegations that the Mayor's budget proposal reduced employee pay by 4.6%." (Pls.' Resp. 7.)

"[A]s a general rule, matters outside the pleadings may not be considered in ruling on a 12(b)(6) motion to dismiss unless the motion is converted to one for summary judgment under Fed. R. Civ. P. 56." Jackson v. City of Columbus, 194 F.3d 737, 745 (6th Cir. 1999) (citation omitted), overruled on other grounds by Swierkiewicz v. Sorema N.A., 534 U.S. 506, 510 n.2 (2002). As an exception to the general rule, courts may "consider public records, matters of which a court may take judicial notice, and letter decisions of governmental agencies." Id. (citing Nieman v. NLO, Inc., 108 F.3d 1546, 1554 (6th Cir. 1997)); see also Jones v. City of Cincinnati, 521 F.3d 555, 562 (6th Cir. 2008) ("A court may consider public records without converting a Rule 12(b)(6) motion into a Rule 56 motion.").

Negotiations between labor organizations and local governments are open to the public under Tennessee law. Tenn. Code Ann. § 8-44-201 ("[L]abor negotiations between representatives of public employee unions or associations and representatives of a state or local governmental entity shall be

34

open to the public."). Transcripts of public proceedings are public records. The Court may consider the March 25, 2011 Transcript.

To help Plaintiffs, the March 25, 2011 Transcript must establish that Wharton should have known that his actions violated the Constitution. See DePiero, 180 F.3d 785-86. The right violated must be clearly established in a fairly "particularized . . . sense: the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987). The analysis does not turn on the presence of identical issues or facts that have "previously been held unlawful," but the unlawfulness of the challenged actions must be apparent "in light of pre-existing law." Anderson, 483 U.S. at 640; see also Ashcroft v. al-Kidd, 131 S. Ct. 2074, 2083 (2011) ("We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate.")

The qualified immunity test is a "fair warning" standard. Hope v. Pelzer, 536 U.S. 730, 741 (2002); see also United States v. Bunke, 412 F. App'x 760, 764 (6th Cir. 2011) ("When assessing whether a defendant had notice that his conduct violated established constitutional law, the salient question . . . is

whether the state of the law [at the time of the violation] gave [the defendant] fair warning that [his] alleged treatment of [the plaintiff] was unconstitutional.") (internal citation and quotation marks omitted).  The Sixth Circuit has explained that a plaintiff has "two paths for showing that [officials were] on notice that they were violating a 'clearly established' constitutional right—where the violation was sufficiently obvious under the general standards of constitutional care that the plaintiff need not show a body of materially similar case law . . . and where the violation is shown by the failure to adhere to a particularized body of precedent that squarely governs the case here."  Lyons v. City of Xenia, 417 F.3d 565, 579 (6th Cir. 2005); see also Stoudemire v. Mich. Dep't of Corr., No. 11-1588, 2013 U.S. App. LEXIS 2159, at *14 (6th Cir. Jan. 31, 2013).

The parties have not provided, and the Court has not found, materially similar case law governing these issues.  Thus, whether Plaintiffs can overcome the presumption of qualified immunity depends on whether the unreasonableness of Wharton's actions "was sufficiently obvious under the general standards of constitutional care that the plaintiff need not show a body of materially similar case law."  Lyons, 417 F.3d at 579.

Plaintiffs rely on the incongruity between representations made during the March 25 negotiations and the budget proposed by Wharton and adopted by the City Council. Plaintiffs argue that portions of the March 25, 2011 Transcript capture Wharton's alleged violation of clearly established law:

> City Representative: Effective July 1st, 2011, through June 30th, 2012, the current wage rates of employees covered by the [proposed MOU] will be increased by zero percent. Effective July 1st, 2012 through June 30th, 2013, by February 1st, 2012, either party must request to reopen the wage article for negotiations. The negotiations will be conducted in accordance with the impasse ordinance
>
> For the record, zero means zero. It doesn't mean decrease. It doesn't mean increase.
>
> Looking into the future comments were made on the – on the City's side. There's nothing in this proposal that – in other words, there's not – we're not – the City is not trying to pull the wool over your eyes. This means there's no proposed decreases, there's no proposed increases for those in the Memphis Police Services Association.
>
> Union Representative: It means that the wage rates that are set forth in the 2008 to 2010 MOU will remain the same for the next year. Is that correct?
>
> City Representative: Yes. Until renegotiated next year on a date that – now, it does say – there is one thing different. It says that either side has to ask for them to be open. Y'all are free to talk about it. . . .
> So once y'all ask for them to be open, the City will come back to the table with the Memphis Police Association and negotiate any new wages beginning July 1st of 2012.

(Mar. 25, 2011 Transcript 61-62.) Under Plaintiffs' theory, Wharton proposed a budget that included a wage reduction and

that circumvented the Impasse Ordinance. Plaintiffs argue that Wharton's proposal rises to the level of a clearly established constitutional violation.

The March 25, 2011 Transcript and the Second Amended Supplemental Complaint do not show that Wharton's alleged role in wage reductions violated general standards of constitutional care. Plaintiffs rely on rules or understandings that govern labor negotiations, but that reliance rests on a general legal principle. Plaintiffs' identification of a protectible property interest, considered in isolation, is insufficient. See Anderson, 483 U.S. at 640. The type of conduct in which Wharton allegedly engaged must be shown to have violated general constitutional provisions "with obvious clarity to the specific conduct in question." Pelzer, 536 U.S. at 741.

There is no obvious clarity in this case. Not only is the enforceability of the MOU at issue, Simerly, 2011 Tenn. App. LEXIS 1, at *31-32, but Wharton acted in his capacity as negotiator of municipal labor agreements. Three months after the execution of the MOU, a salary reduction was adopted. The Sixth Circuit has concluded that government officials are afforded considerable discretion in resolving budgetary concerns. Smith v. Jefferson Cnty. Bd. of Sch. Comm'rs., 641 F.3d 197, 217 (6th Cir. 2011) (budgetary priorities are "discretionary, policymaking decision[s]" that have far-reaching

38

consequences).   The reasons for that discretion are obvious: the adoption and implementation of a budget require officials to impose sacrifices and weigh competing interests. Constitutionalizing municipal budgetary matters by permitting personal liability in the circumstances presented here would compromise the ability of decision-makers to exercise their discretion.   "Public officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." Maciariello v. Sumner, 973 F.2d 295, 298 (4th Cir. 1992); see also Colbert v. City of Toledo, No. 3:07-CV-493, 2010 U.S. Dist. LEXIS 13268, at *6 (N.D. Ohio Feb. 16, 2010).   Wharton did not transgress bright constitutional lines.   He is entitled to qualified immunity.

### 3.   Section 5-4-13

Wharton is also entitled to qualified immunity from Plaintiffs' claims under the Impasse Ordinance.   Whether the MOU is enforceable under Tennessee law is an issue of first impression.   Plaintiffs have admitted as much.   (See Hr'g Tr. 154:18-19, ECF No. 42.)   An unsettled issue of first impression is not clearly established law.

### V.   Conclusion

For the foregoing reasons, the City's Motion to Dismiss is GRANTED IN PART and DENIED IN PART.   The City's Motion to Dismiss Plaintiffs' First Amendment claim is GRANTED.   The

39

City's Motion to Dismiss Plaintiffs' claims under the Fourteenth Amendment and § 5-4-13 is DENIED.   Wharton's Motion to Dismiss Plaintiffs' claims against him in his individual capacity is GRANTED.

So ordered this 26th day of March, 2013.


/s Samuel H. Mays, Jr._____
SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE